Good morning, and welcome to the final day of our panel sitting here in Jacksonville. Judge Lagoa is going to be joining us by phone, so she'll be able to participate. I'm here, Judge Jordan. Good morning, Judge Lagoa. Good morning. Thank you for having me. So she'll be able to listen to all of you, and if she needs to or wants to, to ask questions and participate. Obviously, there's going to be a little bit of a disconnect between her and you because she can't see you, so if one of you steps on each other's sentences, don't worry about it. We'll just figure it out as we go forward. You know the lighting system. When the yellow light goes on, that means that your time is drawing to a close, so begin to wrap up. If we take you beyond the red light, then just keep on going as you'll be on our time. Our first case this morning is number 23-11000, United States v. Dallas Robinson, Jr. Ms. Kyle. Yes. Thank you. Good morning, Your Honors. We're here because the first issue that we're here on is the question of the amendment of 821, I'm sorry, just one of those days, relative to Amendment 821. And at his sentencing, Mr. Robinson was given two points, status points is what they were. And they went, the amendment went into effect after Mr. Robinson was sentenced. Had the amendment been in effect at the time he was sentenced, then his guideline range would have been substantially less. I started out by filing an Anders brief, and it was correct at the time it was filed, because that's under the facts that we had at that moment. Months later was when the amendment to 821 was filed. I planned on filing a supplement or corrected brief or whatever was appropriate, and in the interim, the court ordered me to file a merits brief. I did that with two issues, and the amendment or remand or whatever was necessary under 821 was the first issue, as I said. However, there is case law, and I recognized that, and the government has submitted a supplemental authority explaining that remanding the case, which is what I had asked for, would have been improper procedurally, that the appropriate remedy would have been a motion for a sentence reduction. I assisted the client in doing that. The motion has been filed with the district court, public defender appointed, and it's under consideration by the district court. Yes, I'm sorry. I was going to say that on the first point, on the guideline point, there is authority to support your position. The Seventh Circuit has done what you suggest should be done. The problem is that our case law suggests and indicates that when you have an amendment that is substantive in nature, it's not applied on appeal. Yes, I understand that, and that's what I understood when I assisted the client in filing the appropriate motion. But when I first filed the Andrews brief, I truly believed that everything was correct. I did not know what the appropriate avenues were once the amendment 821 was filed, except to preserve Mr. Robinson's rights as much as possible, get the motion filed with the district court, and let the district court deal with it. You want to talk about the second issue? Of course. Go ahead, Judge Lagoa. May I ask a question? The motion for sentence reduction is currently before the district court, but obviously the district court doesn't have jurisdiction to proceed at this moment. Would it be appropriate for us to remand for the district court to consider the motion? I think it would be. Some of the case law says that it's not appropriate, that it should be simply left up to the district court, but I don't know that without a remand how the district court technically has jurisdiction to deal with it. We're between a catch-22 here, and the client's in the middle. I can't represent the client in the district court because I haven't been appointed. Federal public defender was appointed, and that was done and approved by the 11th Circuit, by you all. So I'm just not sure where we are. I understand the government's position, but I think that remand for resentencing is, if it's appropriate, is the answer. So let me ask a follow-up, just so I understand it. A motion has been filed for sentence reduction already? Yes, ma'am. And it was filed by you or by the PD's office? Actually, it was filed by the client because I had no ability to represent him there. So I directed him and helped him to file the appropriate motion there. At that point, the motion was accepted by the district court, and the district court appointed a public defender to represent Mr. Robinson on that motion, and that motion is proceeding at this point that I'm aware of. You want to talk about the second issue, Ms. Kyle? Yes. Yes. As to the second issue, I have a problem with the second issue in that Mr. Robinson received a four-level enhancement under 2K2.1. And 2K2.1 talks about that, requires that if there is a firearm in connection with another felony, then you can use that basis as an enhancement. In this case, there was no other felony was charged or proved against Mr. Robinson, no other drug case. No drug charge was filed. No drug charge was in the indictment. All we have is a gun case. All we really have is a gun case, and he admitted to the gun case. He admitted it was his gun. But we've got a funny situation where we have a co-defendant, and the co-defendant case was assigned to a different judge, same district. And Robinson to Judge Young. And the co-defendant, Mr. Wembley, was found in his sentencing. The government says that he was not found accountable, that Mr. Robinson was found accountable. I disagree. Wembley was not held accountable in the Hernandez case for the marijuana in the backpack, and he didn't receive the four-level enhancement, even though probation had recommended that the enhancement apply to Wembley based upon the marijuana in the backpack. However, Judge Young... But in this case, Ms. Kyle, the backpack, okay, he was, Mr. Robinson was in the front passenger seat of the car, right? That's correct. Wait, wait, wait, let me tell you what I think the evidence shows, and then you can tell me why it doesn't support the enhancement. He was in the front passenger seat of the car. In the footwell of, in the footwell of the front passenger seat was the firearm, right? Correct. With his fingerprint, right? I'm not sure, was the firearm, I've, you know, I've just forgotten, was his firearm down there with it, or I think it was thought it was in the back seat, but... It was not, it was in the...  It was in the... Footwell? The footwell of the front passenger seat, and it had his fingerprint on it. No, the backpack was. The backpack was on the floorboard of the front passenger seat, right? Correct. And the backpack had both marijuana and ammunition, right? I think that is correct. Okay, so the marijuana in the backpack was right next to him, so the district court could have pretty easily found that he had, at the very least, constructive possession of that backpack and the contents of it. In addition, and you can correct me if I'm wrong, the ammunition in the backpack matched the firearm found in the footwell next to him, so when you put all that together, why did the district court commit clear error in applying the enhancement? I have no problem with the accountability for the firearm. This is a firearm case. He pled guilty to being a felon in possession, so that goes without saying. But it has to be in connection with another... All right, but having the firearm has to be in connection with another felony, and the other felony, I presume you're saying, is being a felon in possession. No, no, the other offense is drug trafficking, because... But I don't think that they... Go ahead. No, no, no, you go ahead. But I don't think that the government proved that he was accountable for those drugs, even with the circumstantial evidence. I mean, you look at it and think many times that you've gotten into a car, someone's pulled up and you've gotten into a car and there's been stuff on the floor, and you just move that aside. And I think that is what has happened. I grant you that it doesn't look good. Wasn't there enough in the backpack to infer trafficking? You don't think so, because there was no indicia as to what they were gonna do with it. It wasn't a huge amount. But counsel, didn't they have a scale? They did have a scale, but there were no fingerprints on the scale. Isn't that normally indicia of distribution? I'm not sure it is. But I mean, there's scales for many things. I have had a scale in my car when I've been doing pottery. Maybe that's stretching it, Judge. But there was no DNA on the scale. There was no fingerprint on the scale. There was no fingerprint on the marijuana. He didn't have any marijuana on his person. He was never charged, either in the federal court or in the state court, with possession of marijuana. We don't know when the container was put in the car, the backpack, I mean. Who put it there and when it was done. He wasn't a driver. In fact, the car was stolen. And I suggest that there was no other felony relative to the drugs that would warrant the four-point enhancement. And in fact, no judge ever said, okay, I'm holding you responsible for it. Judge Jung particularly, the closest that got was Judge Hernandez with Wembley. But Judge Jung just kind of said, okay, all this evidence is pretty bad and I'm going to put a four-point enhancement. Keeping in mind that the government only asked for a 48-month sentence. Judge Jung took all of this evidence and hiked it up to a 66-month. And so I just don't think the evidence is sufficient for that four-point enhancement based on the drugs. Okay, Ms. Kyle, thank you so much. You've saved your time for rebuttal. And before I forget to do it, I want to thank you for your service to both Mr. Robinson and to us. We know that you're court appointed and we appreciate your work. Thank you, Your Honor. Okay, Ms. Sider. May it please the court. The district court did not clearly earn finding that Mr. Robinson's fireman possession was in connection with another felony offense under guideline 2K2.1. The felony offense was a drug trafficking offense. Mr. Robinson never disputed below that there was a drug trafficking offense. His dispute below and on appeal has been whether it was his drug trafficking offense because he's disputing whether the marijuana in the backpack was his. But the marijuana was in a backpack with the scale and ammunition. That backpack was, as Your Honor said, was on the floor, but it was right by his feet. That is more than enough evidence, that is sufficient evidence for a court to find that he possessed that marijuana, just like he possessed the firearm at his feet. That is the firearm that he was convicted of knowingly possessing. But on top of that, the contents of the backpack, the ammunition, matched the caliber of his firearm. Those two points together are sufficient to support, to show that more likely than not, the marijuana in the backpack was his. And we're here on clear error. So with that, there is no, the district court did not clearly err. There was no other evidence presented by the defense about ownership of the backpack, right, or how it got there or anything else? Correct. And his wallet was on the seat, was it not? Correct. And his ID. Yeah, his ID with it. Correct. So all of the belongings, all of the items around this passenger seat area were his, and that supports the conclusion that the book bag and all of its contents were also his. Unless the court has any further questions on that issue? I'll move to the second. The district court did not err in calculating two criminal history status points under guideline 4A1.1D, then in effect at the time of the sentencing. At the time of the sentencing, that guideline provided directed to assign two criminal history points when a defendant like Mr. Robinson commits the offense of conviction while serving another sentence. It does not matter that, and that, so that was correct. That sentence remains correct even though after sentencing, the commission with Amendment 821 changed the guideline, the substance of the guideline to reduce the number of status points that used to apply. This court in reviewing that guideline applies the guideline in effect, this court in reviewing the district court sentence applies the guideline in effect when it was sent, when the sentence was rendered. This court does not look to the new status point guideline under Amendment 821 because that came after the sentencing and it is substantively different than the guideline that the district court applied. The remedy that Mr. Robinson is seeking is the one, the remedy that Mr. Robinson is seeking for application of Amendment 821 is the one that Congress provided in Section 3582C2. As we've discussed that he has filed his motion for 3582C2, the district court will consider whether to reduce his sentence based on Amendment 821. Judge Algoa, you asked about whether we should do a limited remand for the district court to decide the 3582C2 motion. There's really no need to do that. Right now, the district court could deny the motion while this is on appeal. It can't grant it. But the granting, whether the court decides to grant it or not just doesn't aid in the resolution of this appeal because this appeal is about the correctness of the sentence and whether there was error in the sentence. And so, whether the court reduces the sentence just has no bearing on that issue. I think for my part, I think Ms. Kyle's argument though supported by some Seventh Circuit authority is sort of foreclosed by Eleventh Circuit precedent. Having said that, doesn't the Seventh Circuit approach make sense? Well, the Seventh Circuit found that the district court did an error in the calculation of the guideline. No, it applied the guideline on appeal and then remanded for resentencing, right? No, it didn't apply the guideline on appeal. What do you think the Seventh Circuit did in Claiborne? I think the Second Circuit in Claiborne found that there was no error and then decided that it had authority, that even absent an error, that it had authority to vacate the sentence and remand it. Right, it remanded.  But by applying a substantive amendment on appeal, my question to you is, I understand, I think, and I speak only for myself, I think that Ms. Kyle's argument is foreclosed by our precedent. But my question to you is, why doesn't the contrary Seventh Circuit view make sense? Well, it doesn't make sense because we only review the guidelines, we apply the guidelines or in effect at the time of sentencing. That's what our precedent says, but I'm asking you why the Seventh Circuit view is wrong. I don't think the Seventh Circuit applied, if the Seventh Circuit applied the amended guideline on direct appeal, it would have found that the district court was in error. No, it doesn't have to, it can do it in two steps. It says when the district court took action, it didn't err because the guideline read X, Y, and Z. Now, while the case is on appeal, the guideline reads X, Y, and Z minus one. Although there was no error, we're going to apply that retroactive substantive guideline amendment and if it leads to a different sentence, we're going to vacate and remand. Why doesn't that make sense? Because if there is no error in the sentence, you can't vacate, you can't, you have to vacate the sentence. You can't vacate it. I mean, that's under section 3742, but that is the statute that governs this court's review of the sentence. Subsection F talks about the determination and disposition of the appeal. Paragraphs one and two provide that if this court determines that the guidelines were applied, that the sentence was imposed as a result of the numerated errors therein, which includes a sentence imposed as a result of an incorrect application of the guidelines, this court shall remand. But paragraph three provides that if this court finds that the sentence was not imposed and was not described in those paragraphs one or two, then this court shall affirm. So upon finding here that the district court, that Mr. Robinson's sentence was not imposed as a result of an incorrect application of the guidelines, this court has to affirm. It cannot then vacate the sentence and remand it. Okay, Ms. Heider. Thank you. We ask this court to affirm. Thank you very much. All right, Ms. Call, you've got your rebuttal time. Thank you, Your Honors. I'm going to make it short and sweet. I'm concerned about the client. What does he do? He's... if the district court doesn't have jurisdiction at this point to do anything except deny, and I'm not even sure they have jurisdiction to do that, but nevertheless, if they only have jurisdiction to deny, then what happens to Mr. Robinson? He's got... if you can't remand and the district court doesn't have jurisdiction as it is now, then he's stuck in a situation where he has no options. He can't challenge it under 2255. Well, the... It just seems to be the... I'm sorry. I'm saying that the relatively simple answer to that is that we issue an opinion, whatever that opinion is, very quickly, so that the district court now has jurisdiction to consider his motion for reduction of sentence. As long as the... As long as the district court doesn't take that as a red flag that the court of appeals wants the district court to deny it. Why would we say that? Why would we say anything? That's not... it's not our call. It's the district court's call. All we would do is rule on this appeal. Once this appeal is over, jurisdiction vests back in the district court, and the district court can take whatever action it deems appropriate on the motion for reduction of sentence. We wouldn't telegraph any preference on our part for a ruling one way or the other. That would be inappropriate. But if we... See where you're coming from. I just think that it is for judicial economy that it makes the most sense to do a limited remand, let the district court resolve it, and bring it back. And, you know, that would take care of the issue, I think, would deny it or not. That's the ballparks. Rest with the district court. But I do understand where you're coming from. Other than that, if you have no other questions, I'm going to rest on the brief and I'm up on my argument. And I will thank you very much, all of you, for the time you've given me today and for the option of appearing by Zoom. It's been a tough year here. All right, Ms. Kyle, thank you very much again for your service to Mr. Robinson and to the court. We do appreciate it. Thank you very much as well. Okay, we'll move on to our second case.